IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **TAMMI A. HOOD,** | ) |
| | ) |
| **Claimant,** | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 09-BE-0776-NW |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

On July 3, 2006 the Claimant, Tammi A. Hood, protectively filed an application under Title II and Part A of Title XVIII of the Social Security Act for a period of disability and Disability Insurance Benefits. (R. 12, 65-69). The Claimant alleges disability commencing on June 29, 2006 because of fibromyalgia, multiple joint pain, depression, and a deformed lumbar disc with back, shoulders, and arm pain. (R. 50, 81). On September 28, 2006 the Commissioner denied the claim initially. (R. 12, 50, 52). The Claimant filed a request for a hearing before an Administrative Law Judge on October 20, 2006 (R. 57), and the ALJ held a hearing on March 13, 2008 (R. 12, 58). In a decision dated March 26, 2008, the ALJ found that the Claimant was not disabled as defined by the Social Security Act. (R. 12-20). On April 24, 2008 the Claimant requested Appeal Council review of the hearing decision. (R. 5). On March 24, 2009 the Appeals Council denied the Claimant's request for review. (R. 4).  Consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. The Claimant has exhausted her

administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3). For the reasons stated below, the decision of the Commissioner will be reversed and remanded for a rehearing.

## II. ISSUE PRESENTED

This case presents three issues: (1) whether the ALJ properly considered the opinions of the Claimant's treating physician; (2) whether the ALJ improperly used his own medical judgement when discrediting the Claimant's testimony regarding her pain; and (3) whether the ALJ improperly relied on the opinion of a nonexamining, reviewing doctor.

## III. STANDARD OF REVIEW

The standard of review of the Commissioner's decision is a limited one. "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. 405(g) (2006) (amended 2010); *see also Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). However, "[n]o similar presumption of validity attached to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir.1982)).

"Substantial evidence" is "'more than a scintilla.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "'It means such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Id.* "Under the substantial evidence test, we view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc). Further,

"findings of fact made by administrative agencies . . . may be reversed . . . only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Id.* Yet, "[a] reviewing court may not look 'only to those parts of the record which support the ALJ,' but instead 'must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ.'" *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986) (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir.1983)); s*ee also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2006). To make this determination the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520, 416.920 (2010).

The Eleventh Circuit has established rules regarding the weight to be given to the opinions of treating physicians. Initially, an ALJ "must accord 'substantial' or 'considerable' weight to the opinion of a Claimant's treating physician unless 'good cause' is shown to the contrary." *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982)). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). Moreover, where the ALJ "ignored or failed properly to refute a treating physician's testimony" the Eleventh Circuit has held, "as a matter of law," that the testimony must be "accepted . . . as true." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). To properly refute the testimony, the ALJ is required to "clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *MacGregor*, 786 F.2d at 1053 (11th Cir. 1986)).

However, where a Claimant's physician states that the Claimant "is 'disabled' or 'unable to work[,]' the agency will nevertheless determine disability based upon the medical findings and other evidence." *Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986) (quoting 20 C.F.R. § 404.1527 (1986)); *see also* 20 C.F.R. §§ 404.1527(e), 416.927(e) (2010).

## V. FACTS

The Claimant was forty-seven years old at the time of the administrative hearing. (R. 37, 65, 76). She has a high school degree and a home health aid certification. (R. 88). Her work experience consists exclusively of employment as a home health aid. (R. 45, 82). The Claimant

asserted that her conditions began to bother her in 1997, but that she worked until June 29, 2006. (R. 81). The Claimant originally alleged that she was unable to work because of fibromyalgia, multiple joint pain, depression, and a deformed lumbar disc resulting in pain in her back, shoulders, and arms. (R. 50, 81). At her hearing, the Claimant also asserted impairments from migraines and chronic fatigue (R. 36), and testified that she suffers from continuous pain that is caused by her fibromyalgia (R.40).

*Opinions of the Claimant's Treating Physician Dr. Hall*

According to Dr. Robert B. Hall's treatment notes, Dr. Hall treated Ms. Hood from October 1994 through December 2007.  From October 1994 through August 1996, Dr. Hall's treatment notes indicate that he examined Ms. Hall on many occasions.  On September 3, 2003, Ms. Hood visited Dr. Hall after going to the emergency room with chest pains.  Dr. Hall noted that she suffered from muscoskeletal pain and diagnosed her with chest pain and mitral valve prolapse. (R. 159).  On February 18, 2005, Ms. Hood complained of cough and chest congestion. Dr. Hall prescribed Tylenol for her fever and noted that she had fever, cough, muscoskeletal pain, and headache.  He also diagnosed her with fibromyalgia. (R. 152).  On September 20, 2005, Dr. Hall's notes indicate that Ms. Hood sought treatment for lower back pain with spasms and pain in her legs.  He diagnosed Ms. Hall with lower back pain and prescribed Lortab to help with her pain. (R. 150).  Dr. Hall examined Ms. Hood on December 12, 2005 as a result of Ms. Hall's complaints about back and hip pain.  On February 28, 2006, Ms. Hall complained of a flare up in her fibromyalgia that started in her neck and shoulder and then spread to her entire body.  Dr. Hall diagnosed her with, *inter alia*, fibromyalgia and depression. (R. 148).

On May 1, 2006, Ms. Hall visited Dr. Hall and complained of pain in her left leg and

lower back. Dr. Hall noted that Ms. Hall was weak and tired and suffered from pain in her legs, back, and knee. She also had headaches. He also noted her chronic fatigue. He diagnosed her with, *inter alia*, fibromyalgia and degenerative disk disease. He recommended surgery for her degenerative disk disease. (R. 147). On June 3, 2006, Dr. Hall noted that Ms. Hall's upper and lower back had several tender points. He again diagnosed her with fibromyalgia. (R. 151).

On August 7, 2006, Dr. Hall examined Ms. Hood. Her chief complaint was left ear pain. In his treatment notes for this visit, Dr. Hall noted that Ms. Hall appeared weak and tired, had ear pain, headache, and muscoskeletal pain. Specifically, he noted that Ms. Hall's muscoskeletal system was abnormal and that she had multiple tender points over her back and neck. He diagnosed Ms. Hood with, *inter alia*, fibromyalgia and depression. (R. 145).

Similarly, Dr. Hall's notes from November 2006 to April 2007 indicate that he examined Ms. Hall on multiple occasions. (R. 200-25). On November 6, 2006, Dr. Hall diagnosed Ms. Hall with fibromyalgia after examining her. On that date, Ms. Hall complained of back pain and pain in the right side of her neck. She also complained that her mouth was sore and that her feet were bothering her. On April 27, 2007, Ms. Hall complained of neck pain and Dr. Hall diagnosed her with hypertension.

Dr. Hall's final set of treatment notes from July 2007 to December 2007 indicate that he examined Ms. Hall on four occasions. (R. 250-53). Ms. Hall complained that she was hurting all over and suffering from migraines. Again, Dr. Hall diagnosed her with fibromyalgia, fatigue and weakness, annular tear of her L5/S1 disc, and mitral valve prolapse.

On May 24, 2006 Dr. Hall completed a Report of Disability form that was designed by Retirement Systems of Alabama. He noted diagnoses of fibromyalgia, degenerative disk disease,

an annular tear of her L5/S1 disc, depression, and hypertension. He opined that Claimant's work should be restricted to "not …lifting or pulling weights over 25 lbs. . . . She also should not bend, stoop or squat repeatedly." As a result of these limitations, Dr. Hall concluded that the Claimant was "totally incapacitated [from] further performance" of her former job as a home health aid and that no "reasonable accommodations" could enable her to continue her job. (R. 141-42).

On March 11, 2008 Dr. Hall offered an additional opinion regarding the Claimant's ability to work. Dr. Hall recounted the Claimant's diagnoses, including fibromyalgia, mitral valve prolapse, migraine headaches, depression, lumbar disk disease with resultant chronic back pain, and radiculopathy.   Then, Dr. Hall opined that the Claimant's "conditions leave her suffering from chronic severe pain, limited mobility, depression and chronic fatigue." He concluded that the Claimant was "clearly permanently and totally disabled and will not be able to work any job at the present or in the future, despite aggressive medical management." (R. 254).

*Opinion of Consultive Physician Dr. Vakharia*

On August 29, 2006, Dr. Bharat Vakharia, an internal medicine physician, conducted a physical exam of the Claimant. (R. 174-78). Dr. Vakharia noted that because of the Claimant's overall pain, she could not stand for more than 30 minutes, sit down for more than an hour, or lift more than 15 pounds.  Further, he recorded that she became tired after walking 150 feet.  Dr. Vakharia found that Claimant's overall muscle strength was 4/5 reduced due to alleged pain, that she could walk on her heels and toes for a few steps, that she had full reflexion of the spine, and that she could squat and return to a standing position.  As a generalization, the doctor noted that the Claimant's pain was "getting worse;" yet, the Claimant's pain medicine and muscle relaxer made the pain "bearable." (R. 174-75).

*Opinion of Consultive Psychologist Dr. Tenbrunsel*

On September 6, 2006, Dr. Thomas W. Tenbrunsel, a licensed psychologist, conducted a psychological evaluation of the Claimant. (R. 180-81). Dr. Tenbrunsel noted that the Claimant had never seen a psychologist before (R. 181). During the evaluation, the Claimant reported along with her physical ailments that she had been depressed for the last fifteen years and that she cried everyday. Dr. Tenbrunsel described the Claimant as "neat and clean in appearance" and "well oriented." However, the Claimant reported "hearing voices and seeing things," which the doctor characterized as more spiritual than psychotic. (R. 180). Dr. Tenbrunsel concluded that the Claimant was "certainly not psychotic" and gave the Claimant a "generally good" prognosis regarding her depression and PTSD, yet he recommended psychiatric medical treatment and psychotherapy (R. 180-81). Finally, he opined that "[t]here is no psychological reason that she could not maintain employment; understand, remember, and carry out instructions; and respond appropriately to supervisors and co-workers." (R. 181).

*The Claimant's Testimony*

On March 13, 2008 the Claimant presented testimony before the ALJ regarding her impairments. She testified that she suffered from both fibromyalgia and lower back pain. (R. 37-39). Her back pain radiated to her hip, left leg, shoulders, and arms and caused a few visits to the emergency room. On "the doctor's pain scale," she rated her back pain as an eight, but at times it increased to a ten. (R. 38). The Claimant also testified that she suffered from severe headaches and had difficulty with memory and concentrating on one topic at a time. (R. 39-41).

These impairments had various effects on the Claimant. She said that she could stand for five to ten minutes, walk for ten minutes, and sit for fifteen minutes. (R. 39). She also testified

8

that she had trouble sleeping, even though she took sleeping medication. Thus, she had to lie down for one-and-a-half to two hours every day. (R. 40). Even when she was able to sleep through the entire night, she awoke without feeling rested. (R. 42). With respect to housework, the Claimant sometimes sat on the floor and dusted the house, but her husband did everything else, including buying groceries. (R. 41). Further, she only left her house four times a month, or less. (R. 42). Yet, she also testified that she attended church about three times a month. (R. 43).

*The ALJ's Decision*

As an initial matter, the ALJ determined that the Claimant was an insured individual through December 31, 2010. (R. 14). In the first step of the five step process, the ALJ found that the Claimant had not been engaged in a substantial gainful activity since June 29, 2006, the alleged onset date. (R. 14). In step two, the AJL found that the Claimant was limited by the following severe impairments: fibromyalgia, degenerative disc disease, history of an annular tear, depression, anxiety and headaches. (R. 14, 16). In making this determination as to severity, the ALJ considered and discussed the May 24, 2006 opinion of the Claimant's treating physician, Dr. Hall and the opinions of consultative physicians Dr. Vakharia and Dr. Tenbrunel. (R. 14-15). **The ALJ did not accept, reject, discuss, or even mention Dr. Hall's March 11, 2008 opinion** contained in the record. In step three, the ALJ found that the Claimant did not have any impairment that meets or equals those contained in the Listings of Impairments, even when considered in combination. (R. 16).

Before evaluating steps four and five, the ALJ addressed the Claimant's RFC. He determined that the Claimant had a RFC for "light work" subject to various enumerated exceptions. (R. 16). The ALJ found, without explanation, that the Claimant's "medically

9

determinable impairments could reasonably be expected to produce some of the alleged symptoms." However, the ALJ found that the Claimant's statements "concerning the intensity, persistence and limiting effect of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (R. 17).

In step four, the ALJ determined that the Claimant was "unable to perform any past relevant work" because this determination was "consistent with all of the medical opinions" and with the VE's testimony that Ms. Hood's RFC would preclude her past relevant work. (R. 18). In step five, the ALJ determined that jobs that the Claimant can perform existed in significant numbers in the national economy. (R. 18). Therefore, the ALJ concluded that the Claimant was not disabled as defined by the Social Security Act from June 29, 2006 through March 26, 2008. (R. 19).

## VI. DISCUSSION

The Claimant's first and primary argument asserts that the ALJ committed reversible error when he neglected to consider the March 11, 2008 opinion of the Claimant's treating physician, Dr. Hall. Where the ALJ "ignored or failed properly to refute a treating physician's testimony" the Eleventh Circuit has held, "as a matter of law," that the physician's opinion must be "accepted . . . as true." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). To properly refute the opinion, the ALJ is required to "clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *MacGregor*, 786 F.2d at 1053 (11th Cir. 1986)).

In his March 11, 2008 letter, Dr. Hall asserted that the Claimant's diagnoses "leave her

suffering from chronic severe pain, limited mobility, depression and chronic fatigue." He concluded that the Claimant was "clearly permanently and totally disabled and will not be able to work any job at the present or in the future, despite aggressive medical management." (R. 254). The ALJ never referenced this opinion in his decision. The Claimant asserts that fact constitutes error because of the ALJ's failure to give explicit reasons for rejecting the opinion of the treating physician.

The Commissioner advances three tenuous arguments for excusing the ALJ's oversight. First, the Commissioner argues that Dr. Hall's other opinion of May 24, 2006 is "essentially the same" as the opinion at issue. This argument is without merit because Dr. Hall's second opinion contained additional diagnoses not contained within the first opinion.

Next, the Commissioner argues that neither opinion merits weight because they were "merely conclusory." Similarly, this argument cannot stand because Dr. Hall's opinion contained more than mere conclusions; rather, he opined that because of her diagnosed impairments, Ms. Hood suffered from "chronic severe pain, limited mobility, depression and chronic fatigue." The fact that Dr. Hall's opinion contained one conclusory statement that Ms. Hall was "clearly permanently and totally disabled" does not absolve the ALJ of his responsibility to consider the rest of the opinion. Additionally, the fact that Dr. Hall's 2008 opinion is consistent with his treatment notes kept over the course of thirteen years indicates that the ALJ should have at least explained why he discredited (if he did) the opinion.

Finally, the Commissioner argues that Dr. Hall's 2008 opinion encroaches on the Commissioner's responsibility to determine the ultimate question of legal disability under the Social Security Act. While good cause for discrediting an opinion may exist where an opinion is

conclusory or embraces the ultimate determination of disability, this fact is insufficient to excuse ignoring the *entire* opinion.

The Claimant has raised other issues before this court. First, the Claimant contends that ALJ's reasoning for discrediting the Claimant's testimony regarding her pain is not supported by substantial evidence because the ALJ improperly used his own medical judgement in place of the treating physician's testimony. Second, perhaps the Claimant's brief may be read to attack the ALJ's reliance on the opinion of a nonexamining, reviewing doctor. This court declines to consider those issues because remand is already warranted based on the ALJ's failure to consider an opinion of the claimant's treating physician.

## VII. CONCLUSION

For the above reasons, the court finds that the ALJ ignored the March 11, 2008 opinion of the claimant's treating physician. Thus, the Commissioner's decision is not supported by substantial evidence and/or the Commissioner incorrectly applied the law regarding what evidence must be considered. The Commissioner's decision is due to be REVERSED and REMANDED for a rehearing pursuant to sentence four of 42 U.S.C. § 405(g).

DONE and ORDERED this 30th day of June 2010.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE